IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**GLENDA BOWIE AND CURTIS BOWIE**                                                    **PLAINTIFFS**

**v.**                                      **Case No.: 4:21-cv-00176**

**MARY LABUA, aka MARY E. WILSON, and**
**DOLGENCORP, LLC**                                                                 **DEFENDANTS**

## ORDER

Plaintiff Glenda Bowie was shopping at a Dollar General owned and operated by

Defendant Dolgencorp, LLC.  She was injured when a vehicle driven by Mary Labua crashed into

the store.  The Bowies sued Dolgencorp for negligence, asserting that Dolgencorp breached its

duty to maintain a safe shopping location for its customers and its duty to design a safe parking

lot.[1]

Pending before the Court is Dolgencorp's Motion for Summary Judgment.  Dolgencorp

argues that it owed no duty to protect against cars crashing through the front of the store.

Dolgencorp also argues that the Bowies have no chance of prevailing on their claims because the

---

[1] This is the Bowies' second bite at the apple.  Their first lawsuit was dismissed by an Arkansas state court for failure to prosecute.  In that first lawsuit and in this current lawsuit, the Bowies named Dolgencorp and Ms. Labua as defendants.  While Ms. Labua was a proper defendant in the first lawsuit, she is not a proper defendant in the current lawsuit.  *See* Notice of Removal (Doc. 1) ¶¶ 8–22.  That is because the statute of limitations for the Bowies' claims against Ms. Labua has run.  Ark. Code Ann. § 16-56-105; *Bryan v. City of Cotter*, 2009 Ark. 457, at 4, 344 S.W.3d 654, 656.  The only reason the statute of limitations has not run on the Bowies' claims against Dolgencorp is because the Bowies were able to take advantage of Arkansas's one-year savings statute.  Ark. Code Ann. § 16-56-126.  But the savings statute does not save the Bowies' claims against Ms. Labua because the Bowies never served Ms. Labua in the first lawsuit.  *Rettig v. Ballard*, 2009 Ark. 629, at 4–7, 362 S.W.3d 260, 263–64 (holding that timely service is required to benefit from the savings statute); Notice of Removal (Doc. 1) ¶¶ 20–22.  Accordingly, Ms. Labua was fraudulently joined to this lawsuit, and the sole proper defendant in the case at bar is Dolgencorp, LLC.  *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 (8th Cir. 2013) ("[A] plaintiff cannot defeat a defendant's right of removal by 'fraudulently joining a defendant who has no real connection with the controversy.'  If a plaintiff has no legally viable claim against a putative defendant, that party has no real connection with the controversy.") (quoting *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1214 (8th Cir. 2011) (internal citation omitted)).  Ms. Labua must be, and hereby is, dismissed as a defendant.  The Court has considered this issue *sua sponte* because it implicates the Court's subject-matter jurisdiction under 28 U.S.C. § 1332.  If Ms. Labua were a defendant in this action, there would not be complete diversity of citizenship among the parties, and the Court would not have jurisdiction.  *See* Pls.' Compl. (Doc. 2) ¶¶ 1–2, 4 (alleging that the Bowies and Ms. Labua are residents of Arkansas).

Bowies will not be presenting expert testimony. Dolgencorp is right on both fronts. For the reasons given below, the Court GRANTS Dolgencorp's Motion for Summary Judgment.

## BACKGROUND

On March 1, 2014, Mrs. Bowie was shopping at a Dollar General store in Prescott, Arkansas.[2] Mrs. Bowie was standing near the front of the store when, without warning, a black Toyota 4-Runner (driven by Ms. Labua) crashed through the glass storefront.[3] As pictured below, Ms. Labua's car completely entered the store.[4] The car came to a stop a few feet away from where Mrs. Bowie had been standing.[5]



---

[2] Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 1; *see also* Pls.' Compl. (Doc. 2) ¶ 10; Def.'s Answer (Doc. 4) ¶ 10. "Plaintiffs do not contest defendant Dolgencorp, LLC's statement of the facts . . . ." Pls.' Resp. to Def.'s Mot. for Summ. J. (Doc. 15) at 1.

[3] While Dolgencorp acknowledges that Mrs. Bowie "*allege[s]* that . . . [she] was shopping at a Dollar General," Dolgencorp never expressly and specifically admits that Mrs. Bowie was actually inside the store. *See* Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 11) at 1 (emphasis added); *see also* Def.'s Answer (Doc. 4) ¶ 11. However, Dolgencorp does admit that it is an undisputed fact that Mrs. Bowie "was injured in her attempt to flee a vehicle which drove through the front of the . . . store." Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 1. Dolgencorp also incorporates and relies on paragraphs 15–18 of the Bowies' Complaint. *Id.* ¶¶ 1–2. Paragraph 16 of the Bowies' Complaint—which Dolgencorp has essentially admitted by including it in its own Statement of Undisputed Facts—states that Ms. Labua's vehicle had "stopped only a few feet from [Mrs. Bowie] and had travelled past the area where [Mrs. Bowie] was standing and where the checkout counter was located before it was knocked or pushed back during the occurrence." Based on the facts admitted by Dolgencorp, a rational juror could only conclude that Mrs. Bowie was inside the store near the checkout counter when Ms. Labua crashed through the front of the store. *See also* Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 10-7) at 2.

[4] *See* Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 10-7) at 6, 8.

[5] Pls.' Compl. (Doc. 2) ¶¶ 15–17; Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 1 (admitting paragraphs 15–17 of the Complaint); *see also supra* note 3.

"Some object or merchandise struck [Mrs. Bowie] as she ran" from the oncoming car, causing her to "fall onto the floor."[6]  When Mrs. Bowie "regained her bearings and orientation[,] she was lying on the floor in a sprawled, twisted position with glass shards in her hair and all over her body and clothing."[7]  Additionally, Mrs. Bowie's "left knee was bent and her left foot was pinned under her body, her right leg was straight out, and the palm of her left hand was on the floor with her left arm straight."[8]  Mrs. Bowie "felt immediate and excruciating pain and discomfort in her left foot and ankle and in her left wrist and hand, along with lesser pain in her neck, back, and arms."[9]  Mrs. Bowie "was unable to rise from the floor without assistance" or "put weight on her left foot."[10]  Medical staff treated Mrs. Bowie for minor injuries at the scene before transporting her to Wadley Hospital in Hope, Arkansas, for further evaluation.[11]

The Bowies claim that the design of Dollar General's parking lot is to blame (at least in part) for the crash and Mrs. Bowie's injuries.  The Dollar General parking lot (pictured below) has parking spaces that directly face the glass storefront.[12]

---

[6] Pls.' Compl. (Doc. 2) ¶ 15; Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 1 (admitting paragraphs 15–17 of the Complaint).

[7] Pls.' Compl. (Doc. 2) ¶ 15; Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 1 (admitting paragraphs 15–17 of the Complaint).

[8] Pls.' Compl. (Doc. 2) ¶ 15; Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 1 (admitting paragraphs 15–17 of the Complaint).

[9] Pls.' Compl. (Doc. 2) ¶ 17; Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 1 (admitting paragraphs 15–17 of the Complaint).

[10] Pls.' Compl. (Doc. 2) ¶ 17; Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 1 (admitting paragraphs 15–17 of the Complaint).

[11] Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 10-7) at 2.

[12] *See id.* at 10.



At the front of each of these parking spaces—between the parking space and the sidewalk abutting the glass storefront—is a pole.[13]  Each pole is situated at the midpoint of each parking space.[14]  This set-up leaves fairly sizeable gaps between poles: Gaps that are at least large enough for a Toyota 4-Runner to pass through them.[15]  Ms. Labua drove through one of these gaps, across the sidewalk, and into the store.  As she tells it, she was pulling in to one of the front-facing parking spots when her vehicle suddenly accelerated into the store.[16]  The only passenger in the vehicle, Marisa Labua, speculated that Ms. Labua mistakenly hit the gas pedal instead of the brake.[17]

The Bowies first filed suit against Dolgencorp and Ms. Labua in Arkansas state court on February 27, 2017—nearly three years after the accident and just a few days before the statute of limitations was set to expire.[18]  Since then, the Bowies have done the bare minimum to keep their

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 2.

[17] *Id.*  There is not a lot of information concerning Ms. Labua in the record.  We know she was 81 years old at the time of the incident.  We know she has since passed away.  Def.'s Statement of Undisputed Facts (Doc. 12) ¶¶ 2, 8.  We don't know much else.

[18] Def.'s Statement of Undisputed Facts (Doc. 12) ¶¶ 3–4.

claims alive.  The Bowies never served Ms. Labua in that first lawsuit.[19]  And they only served Dolgencorp mere days before the service-of-process deadline.[20]  The Arkansas state court eventually dismissed the Bowies' case for failure to prosecute.[21]

One year later, the Bowies filed a second lawsuit (the case at bar) on the last possible day under Arkansas's one-year savings statute.[22]  The Bowies failed to serve Dolgencorp within the 120 days required by Arkansas law.[23]  Luckily for them, however, the Arkansas Supreme Court had suspended the service deadline during the COVID-19 pandemic.[24]  Dolgencorp removed the lawsuit to federal court, and the case proceeded to discovery.[25]

On May 14, 2021, the parties submitted a Joint Rule 26(f) Report that made initial disclosures due in early June of 2021.[26]  Dolgencorp timely made its initial disclosures.[27]  The Bowies did not.[28]  (As of May 17, 2022, when the Court held a summary-judgment hearing, the Bowies' initial disclosures were 11 months overdue.[29])  Also on May 14, 2021, the Court entered its Final Scheduling Order, making expert disclosures due in early November of 2021.[30]  The Bowies have not made any expert disclosures.[31]  After the expert-disclosure deadline passed

---

[19] *Id.* ¶ 7.

[20] *Id.* ¶¶ 5–6.

[21] *Id.* ¶ 12.

[22] *Id.* ¶¶ 13–14; Ark. Code Ann. § 16-56-126.

[23] Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 15.

[24] *Id.* ¶ 16.

[25] Notice of Removal (Doc. 1).

[26] Joint Rule 26(f) Report (Doc. 8) at 1.

[27] Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 19.

[28] *Id.* ¶¶ 34–38.

[29] *Id.* ¶¶ 26–27; *see also* May 17, 2022 Hr'g Tr. (Rough) at 3.

[30] Final Scheduling Order (Doc. 9) at 1.

[31] Def.'s Statement of Undisputed Facts (Doc. 12) ¶ 32.

without the Bowies identifying any potential expert witness to support their claims, Dolgencorp

moved for summary judgment.[32]

## DISCUSSION

The essence of the Bowies' claims in this case is that Dolgencorp was negligent.[33]  For any

such claim to survive summary judgment, the Bowies must (1) establish that Dolgencorp owed

Mrs. Bowie a duty of care, (2) show that a rational juror could conclude that Dolgencorp breached

the duty, and (3) show that a rational juror could conclude that Dolgencorp's breach caused Mrs.

Bowie's injuries.[34]  Whether Dolgencorp owed a legal duty to Mrs. Bowie is a question of law for

the Court to resolve.[35]  Breach and causation are fact questions that (if genuinely disputed) go to

the jury.

A duty arises when the relationship between two parties imposes upon one party a legal

obligation for the benefit of the other.[36]  The existence, nature, and scope of a legal duty depends

on the circumstances of each case and the relationship between the plaintiff and defendant.  The

Bowies' negligence claims rely on two different duties they say Arkansas law imposes on

Dolgencorp.  The first is a duty that arises from the customer-shopkeeper relationship.  Cases

involving this duty are often called "premises-liability" cases.  The second is a duty that arises

---

[32] Discovery closed on January 7, 2022.  Final Scheduling Order (Doc. 9) at 1.  Dolgencorp moved for summary judgment on November 18, 2021.  Def.'s Mot. for Summ. J. (Doc. 10).  To the best of the Court's knowledge, no discovery at all has taken place, with the exception of Dolgencorp's timely initial disclosures.  *See* Def.'s Statement of Undisputed Facts (Doc. 12) ¶¶ 25–38; May 17, 2022 Hr'g Tr. (Rough) at 3 (Dolgencorp's counsel stating that the Bowies "have failed to pursue discovery in this case").

[33] Pls.' Compl. (Doc. 2) ¶¶ 24–26.

[34] *Shanner v. United States*, 998 F.3d 822, 825 (8th Cir. 2021) (citing *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 386 S.W.3d 439, 449 (2012)).

[35] *Id.*

[36] *Duran v. Sw. Ark. Elec. Coop. Corp.*, 2018 Ark. 33, at 6, 537 S.W.3d 722, 726.

from the design of the parking lot.  Cases about this duty are often called "negligent-design" cases.

The Court addresses each alleged duty (and breach) in turn.

## I.  Premises Liability

In Arkansas, shopkeepers like Dolgencorp have a duty to take reasonable steps to protect their customers from foreseeable harm.[37]  The Arkansas Supreme Court has clarified that "[t]here is no duty to guard against merely possible, as opposed to likely or probable, harm."[38]  Although the Arkansas Supreme Court has not defined "probable" in this context, it has given no reason to think that "probable" has a unique meaning in this context.  Probable events denote those "likely to be or become true or real."[39]  Possible events, on the other hand, "may or may not occur."[40]

Everyone agrees that a car losing control, jumping the curb, and crashing into the store is possible.  Indeed, it happened here.  The question for the Court, however, is whether a car losing control, jumping the curb, and crashing into the store is probable.  More specifically, under Arkansas law, the question is whether it is "within the range of probability as viewed by the ordinary man."[41]

The Bowies have produced no evidence—anecdotal, statistical, or otherwise—that suggests a car crashing into a store is "probable" as opposed to simply "possible."  While the lack of such evidence is not dispositive, it is telling—especially when combined with the lack of any Arkansas caselaw supporting the Bowies' position.  As far as the Court can tell from the parties'

---

[37] *Ethyl Corp. v. Johnson*, 345 Ark. 476, 482, 49 S.W.3d 644, 648 (2001).

[38] *Id.*

[39] *Probable*, *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/probable (last visited July 21, 2022).

[40] *Possible*, *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/possible (last visited July 21, 2022).

[41] *Ethyl Corp.*, 345 Ark. at 482, 49 S.W.3d at 648 (quoting *Larson Mach., Inc. v. Wallace*, 268 Ark. 192, 208, 600 S.W.2d 1, 9 (1980)).

submissions and its own research, neither the Arkansas Supreme Court nor the Arkansas Court of Appeals has ever held, suggested, or even hinted that the out-of-control-car scenario is "probable." To be clear, they haven't said the opposite. It's more that a case like this one has not come up. Still, as explained below, in these circumstances, the principles of federalism enshrined in our Constitution and in the line of Supreme Court cases descending from *Erie Railroad Company v. Tompkins* counsel restraint.[42]  Federal courts must take great care not to unilaterally impose state common law duties unless it is clear that the state courts would do so. This case presents a paradigmatic example of why that is so.

The legal conclusion sought by the Bowies—that the out-of-control-car scenario is probable—would result in a serious expansion of common law duties on shopkeepers in Arkansas. And these expanded duties would correspondingly give rise to costly risk-mitigation obligations in Arkansas. If a driver losing control of a car while parking is a probable event, almost every shopkeeper in Arkansas (at least those with parking lots) would have a lot of work to do. Protecting their storefront from an out-of-control car would be the tip of the iceberg. What about protecting people walking in the parking lot or on sidewalks near parking spaces? What about protecting the other cars already parked in the parking lot? Shopkeepers would be required to create an endless number of barriers around their storefronts, store entrances, store exits, and parking lot sidewalks. They might even be expected to raise barriers between adjacent parking spots in a parking lot. Essentially, shopkeepers would have a legal obligation to take at least some action to fortify almost every area of their property because it is "probable" that a driver will lose control of his or her car and endanger pedestrians, other drivers, or parked vehicles.

---

[42] 304 U.S. 64 (1938).

None of this is to say that Arkansas's common law should not impose those duties and obligations on shopkeepers. But it's the type of state common law decision that a federal court should be reticent to foist upon a state without darn good indications that the state supreme court would reach the same conclusion. And here, what little indications there are point in the opposite direction. The Arkansas Supreme Court has made clear that the duty to protect from probable harm is not supposed to be so expansive as to make a shopkeeper an "insurer of safety of invitees on his premises . . . ."[43] Declaring the out-of-control car scenario to be probable as opposed to just possible would likely bend that principle past its breaking point. Accordingly, the Court concludes that Dolgencorp did not have a duty to protect Mrs. Bowie from a car losing control, jumping the curb, and crashing into the store. So Dolgencorp is entitled to summary judgment on the premises-liability claim.

In any event, Dolgencorp would be entitled to summary judgment even if it did have the duty to protect Mrs. Bowie. That is because no rational juror could conclude that Dolgencorp breached its duty. Here's why.

The Bowies' breach argument focuses almost entirely on the gaps between the poles separating the parking spots from the glass storefront.[44] Recall that the poles were placed in the center of each parking spot.[45] The Bowies say that a rational juror could conclude that Dolgencorp failed to act reasonably because it left gaps between the poles that were large enough for an SUV to pass through.[46]

---

[43] *Ollar v. Spakes*, 269 Ark. 488, 493, 601 S.W.2d 868, 871 (1980).

[44] Pls.' Compl. (Doc. 2) ¶ 21.

[45] *See supra* at p. 4.

[46] Pls.' Compl. (Doc. 2) ¶¶ 22–23.

Dolgencorp says the Bowies cannot possibly prove (at trial) a breach because their argument requires expert testimony.  Expert testimony is required when "[l]ay jurors . . . are not likely to possess 'common understanding' about how products are designed."[47]  Dolgencorp argues that lay jurors are not likely to possess a common understanding about the design of retail store parking lots, including matters such as the appropriate placement of and distance between poles in a parking lot.[48]  The Court agrees.

The Bowies have not identified any expert to support their position, have not produced an expert report from anyone, and have not indicated they have an expert to testify at trial.  Their time to do these things has long since passed.  So the Bowies' premises-liability claim stands no chance of success at trial.

The Bowies' only serious retort is that an expert is not necessary because (1) any lay person who looked at the large gap between the poles would see that a car would fit between them, and (2) any lay person would know that a car could lose control, jump the curb, and hit the building.  There are serious deficiencies with this argument.  First, it assumes that the mere fact that a car could intentionally or accidentally angle itself in such a way as to fit through the gaps is enough (on its own) for a rational juror to find a breach.  The Court disagrees with this assumption.  But perhaps more importantly, if the Bowies' argument were correct, it would doom their claim in a different way.  The logical conclusion of the Bowies' argument is that any ordinary person walking into the Dollar General store would perceive the risk of a car crashing through the store.  In

---

[47] *Dancy v. Hyster Co.*, 127 F.3d 649, 653 (8th Cir. 1997).

[48] Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 11) at 11 (quoting *Dancy*, 127 F.3d at 653).

Arkansas, that is called an "open and obvious danger."[49]  And, in Arkansas, shopkeepers have no duty to protect customers against open and obvious dangers.[50]

There's simply not enough room between Scylla and Charybdis for the Bowies to make it through unscathed.  If lay jurors don't possess adequate knowledge about the location of and space between poles in a parking lot, their claim fails for lack of an expert.  If lay jurors possess adequate knowledge, that means (in the circumstances of this case) that the location and spacing of the poles created an open and obvious danger.  Either way, the premises-liability claim fails.  Presented with this problem at the motion hearing, the Bowies' counsel conceded that he could not (to mix metaphors) untangle or cut this Gordian knot.[51]

## II.  Negligent Design

The Bowies' main argument in support of their negligent-design claim is that Dolgencorp should not have placed parking spots directly in front of the store in such a way that "visitors to the store are encouraged to park their vehicles front-forward close to and directly in front of the front door of the building that contains a glass front door and abutting front glass walls . . . ."[52]  The legal duty applicable to the Bowies' negligent-design claim is essentially the ordinary standard of care applicable to most negligence claims: Whether "an ordinarily prudent person in the same

---

[49] *See Hope Med. Park Hosp. v. Varner*, 2019 Ark. App. 82, at 6, 568 S.W.3d 818, 823 ("A dangerous condition is 'obvious' when 'both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'") (quoting *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 386, 101 S.W.3d 881, 885 (2003)).

[50] *See Ethyl Corp.*, 345 Ark. at 483, 49 S.W.3d at 649.

[51] When first presented with the problem, the Bowies' counsel tried to distinguish their situation, arguing that this case did not present a "traditional open and obvious situation."  May 17, 2022 Hr'g Tr. (Rough) at 29.  But his justification for that distinction was that "a person could not come up to that store and look at those barriers and say well, these are so wide a car could come through there."  *Id.*  The Bowies' counsel quickly acknowledged that the consequence of this argument was that the spacing-of-the-poles issue was not within a lay juror's knowledge, meaning expert testimony would be required.  *Id.*  By the end of the hearing, the Bowies' counsel conceded that he "can't give a response to" the problem.  *Id.* at 33.

[52] Pls.' Compl. (Doc. 2) ¶ 24; *see also* Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 11) at 2.

situation" as Dolgencorp would have "act[ed] in a more careful manner."[53]   There is really no dispute as to whether Dolgencorp owed such a duty.  It did.

The Bowies' negligent-design claim fails, however, because they cannot prove breach without expert testimony.   Arkansas law often requires expert testimony in negligent-design cases.[54]   That is because "absent expert testimony, there is no basis for [a] jury to evaluate the actions of an ordinarily prudent person in the same situation as" the designer of the product (or in this case, parking lot).[55]   How a retail store's parking lot should be designed is a matter outside the "common understanding" of a lay juror.[56]   Therefore, expert testimony is required.   The Bowies' failure to provide expert testimony entitles Dolgencorp to summary judgment.[57]

---

[53] *Dancy*, 127 F.3d at 654.

[54] *See id.* at 653–54.

[55] *Id.* at 654.

[56] *Id.* at 653.

[57] Pls.' Compl. (Doc. 2) ¶ 24(A).  The parties' briefing almost exclusively focused on the Bowies' arguments about the distance between the poles outside the front of the Dollar General store.  During oral argument, the Bowies' claim that the parking spaces were unreasonably close to the front door was quickly discussed.  May 17, 2022 Hr'g Tr. (Rough) at 4; *see* Pls.' Compl. (Doc. 2) ¶ 24.  In its summary-judgment briefing, Dolgencorp acknowledged that the Bowies' Complaint contained some other negligent-design theories (i.e., "designing its parking lot in such a manner as to encourage visitors to park their vehicles front-forward directly in front of the glass [storefront]; . . . placing the checkout counter in close proximity to the [storefront]; . . . failing to 'otherwise provide adequate storefront safety'; and . . . failing to 'use ordinary care and forethought in the planning, design and construction of the site and store where the occurrence happened.'").  Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 11) at 2; *see* Pls.' Compl. (Doc. 2) ¶ 24.  Aside from Dolgencorp's blanket argument that expert testimony is required, however, neither party separately analyzed those claims.  Dolgencorp is right that expert testimony is necessary for all of the Bowies' negligent-design claims.  Whether a checkout counter was too close to the front of the store, such that it was unreasonable, is not a matter of common understanding.  So too for the Bowies' vague and general theory that Dolgencorp did not "provide adequate storefront safety."  Pls.' Compl. (Doc. 2) ¶ 24.

## CONCLUSION

For the reasons provided above, Dolgencorp's Motion for Summary Judgment is GRANTED in its entirety.

IT IS SO ORDERED this 22nd day of July 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE